Good morning. Rebecca Pennell on behalf of the appellant Rodney Glenn Thomas. The lower court in this case focused heavily on the idea of whether or not permission to seize something constitutes permission to search. And in doing that overlooked real issues with respect to whether or not the permission to seize initially was voluntary and whether or not there actually was eventually a permission to search. There were some significant factual issues that just didn't get hashed out, though the court found that they were there. Let me ask you this question really very quickly. My understanding is that when the police showed up and they advised your client's wife that this was child pornography and not gun smuggling, she was stupefied, of course, and one can imagine why. They then asked her at that point in time whether she would consent to allowing them to take the computers and she said no. Now, your main argument, as I understand it is, or at least one of your arguments, is that this was kind of a coercive situation, there was a lot of pressure on her, the policemen were there, she was told that her husband was involved in this rather distasteful activity, and so therefore, but she said no. But then they go back to the office and sometime later, without any police officers present, she calls them up and says, actually, I've changed my mind, come and get it. That's correct. How can that be coercive? The significant fact, I think, that the district court found was there but didn't explore was the assertion that a warrant could be obtained. The law in this circuit is pretty clear that if the officers truthfully tell somebody that they can get a warrant and there seems to be a factual basis for it, it's not a violation of anyone's rights. Our position is that that wasn't truthful. The decision was made that a warrant couldn't be obtained and there was repeated testimony as to that and the district court's findings included a finding that on the very day that they went to the house twice, at that point in time, there had been communications that a warrant couldn't be obtained. Why couldn't the warrant be obtained? Exactly why? Was it fleshed out? Was there a problem? Was it that a warrant could not be obtained or that the U.S. attorney was not inclined to seek a warrant? That was not fleshed out, but I think it's a very significant fact. If law enforcement misrepresents that a warrant can be obtained, and clearly the main reason she wanted to turn over the computers after thinking about it was she was very embarrassed. As Judge Ezra pointed out, it was a devastating announcement as to the nature of the charges and she didn't want the police to come back. I think there was some suggestion that somebody had said to her, well, there's going to be a lot of police and a lot of lights. And there was no findings with respect to that. That wasn't fleshed out. Counsel, what authority do you have that if the officers say we'll get a warrant, that this is so coercive that you can't have consent? Well, it's not – in the vast majority of cases, that's fine if there's probable cause, but there was no finding that there was probable cause. To the contrary, there was affirmative evidence that – Do you have any cases that tell us – The closest cases that I have are in the brief. Bumper v. North Carolina is the Supreme Court case in which, according to LaFave, the analogous situation, it's really the same thing. If you erroneously tell someone you have a warrant, it's the same thing to erroneously tell them that you can get a warrant. Basically then, the permission is just a submission to police authority. And while if there's probable cause to search, that submission may be okay, if there's not, then it's a problem. The officer thought he could get a warrant. He was mistaken. Well, there were no findings as to that. Again, the district court was largely concerned with this issue of what does a consent to seizure mean. And because of that, despite the fact that he found that on the very day the officers went out, the determinations had already made that a warrant couldn't be obtained. What were the determinations? Where was that in the record, that a determination had been made that a warrant could not be obtained? On page 5 of the district court's memorandum opinion. No, I'm talking about the record. At various points in the record. I tried to cite them in my opening brief. What's the strongest evidence in the record that a warrant could not be obtained? Agent Mann, in his testimony, testified several times that he had talks with Agent Santana about whether or not a warrant could be obtained. And Agent Santana had told him that the U.S. Attorney's Office in Ohio had determined that a warrant could not be obtained. And then Agent Mann, even later on. Where is that in the record that a warrant could not be obtained? Where is that in the record? As opposed to the U.S. Attorney was not inclined to seek a warrant. Where is it in the record that a warrant could not be obtained? Your Honor, the reasons for that were never fleshed out. It was even discussed. But you made the representation that there was evidence in the record that a warrant could not be obtained. And I'm asking you, where is that in the record? I apologize. I don't have the page number. But it's in there a few times that they said there was not probable cause. That the U.S. Attorney's Office in Ohio said there was not probable cause. And so why was that? Although clearly somebody in Ohio had to authorize the warrant. Someone with jurisdiction over Ohio. And there may have been good reasons for that. For the determination that there was not probable cause. And that was not fleshed out in the district court. It kind of all boils down to a factual determination as to whether or not her will was overborne. Right? Doesn't it? Or if the permission, as the Supreme Court said in Bumper v. North Carolina, if her consent was mere submission to what? To a show of authority. It's a related issue. I would say it's very related. And then you have a situation here where while the police were there, they were telling her all of these things about a warrant. This all was told to her when they first showed up. Correct. And she says no. That, it appears to me, was a fairly determinative factor in the district court's decision. Because it was later when she went and had an opportunity to think about it herself, without all of this coercive stuff around her, that for all we know it could be that she thought to herself, gee, this is really terrible. I'd like to know for myself whether my husband's been involved in this kind of stuff. Come get the computers and search them. And I think the problem is that despite that information being out there about the inability to get a search warrant, and I apologize, it should be in my brief, I'm hoping, the various places in the record that that was mentioned, that that was not fleshed out. From my read of her testimony, she did not like having the officers there. She felt uncomfortable with her house. So they weren't there, and then she called them back? Because she didn't want, she lived in a small town. She did not want all the lights and the sirens and the attention that would be drawn to her and questions that would be asked with the inevitability of a warrant. Had she known, had there not been the misrepresentation that a warrant could be obtained, her decision may well have been quite different. Counsel, saying that a warrant can be obtained in and of itself is not coercive. No. Just given this context, I'm almost out of time, but just the two remaining issues the government raises, it's our opinion, it's a matter of fact that the judge found that there was only a consent to seize, not a consent to search. The case is cited, which referred to the object of a search, a search can go as far as its object. That's only when there's consent to search, not consent to seize. What would be the purpose of seizing the computers if they weren't going to look at the content? Well, they could well get a search warrant to seize. I could imagine a person in various scenarios turning over something but not giving consent to search, such as get out of here, I don't want to deal with this, I'm not giving you consent to search, or I don't want to be accused of tampering, I'm giving you these things. It happens all the time with vehicles, that police take vehicles and maybe a vehicle is impounded, but a decision whether or not to search that vehicle has to come from different authority. Is there evidence in the record that the officers told her that they intended to look at the contents? What they told her and what the district judge was troubled by is they told her, if we find evidence of pornography, you won't get these back. But they didn't specifically ask her for permission to search. They just said we want to take the computers. They did not clarify that, particularly on the first date. The judge thought that that was clarified by the last date. Our position is all they did on the last date was ask her to affirm what she gave permission to before. They certainly aren't going to get evidence of pornography by looking at a blank screen. I mean, I think they've got to turn it on and search it. They do, but they didn't ask for permission for that, and they could have tried to get a warrant. I don't have much time left, but I'll leave it there. Counselor, I'll just use the next 16 seconds, and then we'll give you a couple of minutes. But on page 9 of your brief, you said that they advised Mrs. Thomas that if she did not agree, they would get a warrant. This advice was despite the fact that at that point the Ohio U.S. Attorney's Office had specifically decided that there was not a basis for a warrant. Right. So your brief doesn't say that was communicated to the agents, just the fact that the U.S. Attorney's Office had decided that. The testimony that came through, unfortunately, the evidentiary hearing was separated by days with agents coming in and out of town. And so some agents weren't asked these questions. Agent Mann said the person he got the information from was Agent Santana, who was the officer that was there on both days. Agent Santana was never asked those questions. All right. Thank you, Counsel. We'll give you a minute or two for rebuttal. Good morning, Your Honor. It's my pleasure to court Russ Smoot for the United States. I guess I would ask the court if it has any specific inquiries or any areas that the government would like to focus its attention on. Well, I think Counsel's central argument here, and I think the one you've got to focus on, because there's certainly no question but that she gave verbal consent. Whether that was legal consent is another story. There's no question she gave verbal consent at the time other than during the initial encounter. So nobody had guns pointed at her and so forth. So the real question is, was her consent vitiated by this alleged chicanery of, you know, falsely telling her that they could get a warrant when they theoretically at least knew that they could not? I would say no, Your Honor. And first I would point out that I was not involved in the suppression hearing, but in reading through the transcript of all of the testimony of everyone involved, the only person that testified concerning the warrant issue was Mrs. Thomas. The agents were not asked on direct that I could find as to whether or not they advised her whether they could obtain a warrant or not. And I'm almost certain upon my review that they weren't asked on cross-examination either, which I think is interesting because the only person that did talk about receiving the warrant was the defense witness, Mrs. Thomas. Now, even if the agents, presuming in arguendo that the agents did, in fact, say that we could get a warrant, then we address the question as to whether or not that's coercive in nature or whether it was some type of false statement. Now, the difference between the bumper case in North Carolina is that the Supreme Court found that the agents represented that they had a warrant. So the practical effect of that is that if I'm asked for a consent and I'm also told that they have a warrant anyway, then my decision as to whether or not to give consent becomes ‑‑ there's no decision there, really. And that was the problem that the Supreme Court had with that type of representation. The courts have not had, this court nor other circuit courts, have had a problem with the representation that an agent could seek a warrant or could obtain a warrant. So the question is not whether or not that's an issue as to whether that representation of possibly obtaining a warrant negates any consent. It's whether or not that was a false statement. I can't remember seeing this. Maybe you can remember. Did she actually, when she testified, testify that had she known that there had been this decision by ‑‑ that there was no probable cause, in other words, that it might be more difficult for them to obtain a warrant, then she was led to believe that she would have not given them consent? First, I don't believe, based on my reading of her testimony, that it was ever referenced that she had an awareness that the ‑‑ I can't remember seeing that anywhere. I don't think it was. I don't think she had an awareness that the U.S. Attorney's Office in Ohio was not going to pursue a warrant. And I wouldn't know ‑‑ You're talking about what she asked later, had she known this fact. I don't ‑‑ I'm sorry, Your Honor. I don't believe so. Yeah, okay. Going back to the question of whether or not that's a false statement or anything, I would submit that the testimony on volume two of the excerpt of record on page 57, the testimony of Agent Marcus Munn, who was the case agent in the Eastern District of Washington, indicated, and I'm quoting from the testimony, that there was not ‑‑ the U.S. Attorney's Office in Ohio was not willing to pursue a warrant, and that basically was at the time that they went out to do the consent search, or the knock and talk, I guess, not a consent search. Could they have gotten a warrant from the U.S. Attorney here? Well, obviously it would have to be ‑‑ our office could write it, forward it to an office in Ohio, and it would have to basically, for lack of a better term, be sponsored by the duty attorney in that office. But I would submit that I don't think we know exactly why the United States Attorney's Office in Ohio wasn't going to pursue the warrant at that time. I know there's references within the record, and I'm not sure if it came out in the briefs or not, upon my review, that one of the decisions that concerned them was that they didn't want to seek a warrant based on reports from Canada, because remember that the defendant was initially arrested in Canada. Right, right. Since that time, the defendant had made conflicting statements. My review is that the defendant told authorities in Canada that he had computers in his home, but when he was brought back to the United States, he made statements to, I believe, Special Agent Munn, that he didn't have computers. He didn't have any computers, and then it turned out he had two computers. So at that point ‑‑ Let me ask this. We have cases which say that a police officer can lie to an individual to get a confession. Well, could he lie to get consent? We don't like to think our officers do that, but as a legal matter, what about that? Well, certainly there's a body of law that allows a person to ‑‑ a police officer, I should say, to use a ruse to enter a home. I didn't find any case law specific to that. As far as obtaining a warrant, I think that it could very well be. I mean, officers are allowed to use deception in order to ferret out crime. Do we have any cases which say that it's too coercive to say something like that to get consent, and therefore the consent is vitiated? Do you have any cases like that? I do not, Your Honor, but I would submit that I think that the case law in itself would say that if the officer is saying that they could obtain a warrant or will seek a warrant, it doesn't necessarily say that they have a warrant at the time, but I think that that's not even a false statement if they believe that they could go back and seek a warrant. But the real issue is, is this coercive? No, Your Honor. And just finally, just on the warrant issue, I just wanted to add that if the United States Attorney's Office in Ohio had made a decision at a certain point in time that they weren't going to pursue a warrant, while the officers checked on this information as to whether or not Mr. Thomas had computers or didn't have computers, I would submit that that analysis could possibly have changed upon their information reporting back to the office that, yes, in fact, Mr. Thomas gave conflicting statements, but now we know that he does have computers. We have talked to Mrs. Thomas. Mrs. Thomas did indicate that the defendant, Mr. Thomas, has access to the computers. So they have, at that point, significantly more information than the U.S. Attorney's Office initially had in Ohio when they made the initial determination. So they could have gone back to the U.S. Attorney and said, wait a minute now, in addition to what you thought, we also have this, this, this, and this. Yes, Your Honor. I can only speculate as to the result that Ohio knew. A lot of the felon's arguments are based on speculation as well because there wasn't a lot of testimony. Yes, Your Honor. I just believe that after the interview, from my view or my opinion as to what's transpired, there would be more probable cause. And if, in fact, the decision not to pursue a warrant was based on the fact that there were Canadian reports, now they had significantly more United States information, so to speak, and that dynamic or that, the analysis of whether or not they would pursue a warrant could certainly have changed. At bottom, Your Honor, the district court found that there was consent. It found that there was consent once the defendant signed the consent form, and according to the order, the memorandum by the district court, that it based, although it pinpointed in time as to when she signed the consent form, it went back to what the court believed she knew at the time that the computers were served, and that's in the memorandum of the court's opinion. The bottom line, Your Honor, is that the factors that go into the totality of circumstances, analysis of whether or not consent was voluntary, all find in favor of a voluntary consent in this situation. All right. Thank you, counsel. We'll give you a minute for rebuttal. To go to Judge Fletcher's question, can an officer lie in order to obtain a confession, I think that that's clear, but what about can they lie to get consent? Correct. Certainly I found no case law to say that, and I cited a state court case, a state of Washington case, that would say the opposite. But even in the context of confessions, not all lies are permissible. If an officer lies about the law during an interaction with a defendant, if he says that, you know, asking for an attorney is not going to do you any good or something like that, then that is a lie that would render the confession involuntary. Lies that are okay may be as to factual issues, such as the other guy in the other room is telling me this, and that's not true. But lies as to legal issues are not okay, and I think that the Supreme Court's decision in bumper means that logically. Thank you. All right. Thank you. Thank you to both counsel. The case just argued is submitted for decision by the court. The next case on calendar for argument is TEF v. Gayson. And for the information of the audience, we will take a short recess five minutes after this case is argued.
judges: Fletcher, Rawlinson, Ezra